LAW OFFICE OF STEPHEN T. CARPENITO
BY:    STEPHEN T. CARPENITO, ESQUIRE
        ATTORNEY ID# 68860


200 MAHANTONGO STREET, SUITE 44
P.O. BOX 570
POTTSVILLE, PA 17901
TELE: (570) 516-9265
FACS: (570) 516-9267

| | |
|---|---|
| **BLACK ROCK BREWING COMPANY,** | **:** IN THE UNITED STATES DISTRICT COURT |
| **ROBERT E. WEAVER, JR.,** | **:** OF PENNSYLVANIA, MIDDLE DISTRTIC |
| **POTTSVILLE ATHLETICS, LLC,** | **:** |
| | **:** |
| **PLAINTIFFS,** | **:** |
| | **:** Docket No: <u>3:25-cv-01671-RDM</u> |
| **VS.** | **:** |
| | **:** |
| **CITY OF POTTSVILLE, CITY** | **:** |
| **COUNCIL FOR CITY OF POTTSVILLE,** | **:** |
| **JUSTIN TREFSGER, TOM PALAMAR,** | **:** |
| **MARK ATKINSON, CITY** | **:** JURY TRIAL DEMANDED |
| **COUNCILMAN, BILL MESSAROS,** | **:** |
| **CITY COUNCILMAN, DOROTHY** | **:** |
| **BOTTO, CITY COUNCILPERSON,** | **:** |
| **BARRY DEWITT, CITY** | **:** |
| **COUNCILPERSON, DAVID CLEWS** | **:** |
| | **:** |
| **DEFENDANTS.** | **:** |

## FIRST AMENDED COMPLAINT

**AND NOW**, comes the Plaintiffs, by and through their Counsel, Stephen T. Carpenito,

Esquire, and do file this First Amended Complaint (all amended allegations in bold) and in

support thereof aver as follows:

1.    Plaintiff, Black Rock Brewing Company (hereinafter "Black Rock") is a duly organized

company under the laws of the Commonwealth of Pennsylvania with an address of 325 S.

Centre Street, Pottsville, Pennsylvania 17901.

2.      Plaintiff, Pottsville Athletics, LLC, (hereinafter "Athletics") is a duly organized limited liability company with an address of 315 Howard Avenue, Pottsville, PA 17901.

3.      Robert E. Weaver, Jr., (hereinafter "Weaver") is an adult individual who resides in Pottsville, Pennsylvania.

4.      Defendant, City of Pottsville (hereinafter "City") is a duly organized municipal entity operating under the laws of the Commonwealth of Pennsylvania with an office located at 401 N. Centre Street, Pottsville, PA 17901.

5.      Defendant, City Council of the City of Pottsville (hereinafter "Council") is a duly elected city council with an office located at 401 N. Centre Street, Pottsville, PA 17901.

6.      Defendant, Justin Trefsger (hereinafter "Trefsger") is an adult individual and duly designated code enforcement officer for the City of Pottsville with an office located at 401 N. Centre Street, Pottsville, PA 17901.

7.      Defendant, Tom Palamar (hereinafter "Palamar") is an adult individual and was duly designated City Manager for the City with an office located at 401 N. Centre Street, Pottsville PA 17901.

8.      Defendant, Mark Atkinson was a City Councilperson during all relevant times with an address at 401 N. Centre Street, Pottsville, PA 17901.

9.      Defendant, Bill Messaros was a City Councilperson during all relevant times with an address at 401 N. Centre Street, Pottsville, PA 17901.

10.     Defendant, Dorothy Botto was a City Councilperson during all relevant times with an address at 401 N. Centre Street, Pottsville, PA 17901.

11.     Defendant, Barry DeWitt was a City Councilperson during all relevant times with an address at 401 N. Centre Street, Pottsville, PA 17901.

12.    Defendant, David Clews was the mayor during all relevant times with an address at 401 N. Centre Street, Pottsville, PA 17901.

13.    Weaver is owner or has a majority interest in Black Rock and Athletics at all relevant times.

## JURISDICTION

14.    Plaintiffs incorporate by reference hereto all preceding paragraphs as if the same were more fully set forth here at length.

15.    This is a civil action under 42 U.S.C. Section 1983, seeking damages and injunctive relief against the Defendants committing acts under the color of law, with the intent and for the purpose of depriving Plaintiff of rights under the Constitution and laws of the United States.

16.    This Honorable Court has jurisdiction in this matter pursuant to 28 U.S.C. Section 42 U.S.C. Section 1983 as the Defendants are governmental actors and the Plaintiffs are citizens of the United States.

17.    This Honorable Court has ancillary jurisdiction over the state tort actions as the relevant facts are similar to the claims under 42 U.S.C. Section 1983.

## RESTAURANT

18.    Black Rock is owner of 325 S. Centre Street, Pottsville, PA 17901, bearing Tax Map Number 68-36-0083, Deed recorded in Deed Book 2684, Page 1822 ("Property").

19.    The Property consists of approximately .38 acres with a two (2) story "Building" with a basement (hereinafter "Structure").

20.    The Plaintiff purchased the Property on or about March 10, 2020.

21.    The Plaintiff opened up a restaurant known as "Black Rock Brewery" (hereinafter "Restaurant") and operated the same at the Property.

22.    Specifically, on or about March 17, 2021, the Plaintiff opened the Restaurant using the Structure and adjoining patio and yard located on the Property.

23.    Prior to opening, the Defendants conducted an inspection and issued a temporary certificate of occupancy.

24.    The only remaining issue for final issuance of a certificate of occupancy was installation of a handicapped accessible lift.

25.    After the Plaintiffs installed the handicapped accessible lift, they requested from the Defendants a final certificate of occupancy on numerous occasions.

26.    However, the Defendants neglected their duties and provided verbal approval to the Plaintiffs to continue to operate the Restaurant with the understanding that when they got around to it, they would issue the final certificate of occupancy.

**GYM**

27.    Athletics is owner of certain property located at 315 Howard Avenue, Pottsville PA 17901 (hereinafter "Gym").

28.    Specifically, the property consists of .10 acres with a large structure bearing Tax Parcel Number 68-35-0163.003, Deed Book 2661, Page 0129.

29.    Athletics leased the Gym to a local private charter school so that said school could have the students participate in physical education.

30.    Additionally, the Gym had a small work out center in the lower floor that was used for personal training by Weaver and his invited guests.

## OPERATIVE FACTS

31.     In early 2023, Weaver expressed an interest in running for local elected position as a republican in the City of Pottsville.

32.     Specifically, Weaver announced his candidacy for city council position in the City of Pottsville in the early part of 2023.

33.     At the time of his announcement the City Council was controlled by a majority of democrats.

34.     The primary for the City Council position was scheduled for May 16, 2023.

35.     During his campaign for City Council Weaver had expressed publicly dissatisfaction with the performance of the current City Council members, performance code enforcement, performance by the City Manager and general operation of the City of Pottsville.

36.      Up until the time of his candidacy and his public comments concerning the Defendants Weaver and his business entities operated in the City of Pottsville without incident.

37.     Up until the time of his candidacy and his public comments concerning the Defendants Weaver and his business entities operated in the City of Pottsville without any allegations that any code, law or ordinance was violated.

38.     Weaver exercised his First Amendment right to free speech in offering criticism of the job that the Defendants were doing in running the City of Pottsville.

39.     Weaver also exercised his First Amendment right to free speech by posting criticism of the performance of the Defendants in running the City of Pottsville.

40.     The Plaintiffs allege that because of Weaver's exercise of his First Amendment rights and for running for office as a republican the Defendants conspired together to violate the Plaintiffs' Constitutionally Protected rights under the 1st, 5th, 13th and 14th Amendments.

41.    The Defendants conspired together to manipulate the various codes, ordinances and laws to intentionally harm the Plaintiffs.

42.    The Defendants engaged in a campaign of harassment included utilizing codes, laws and ordinances to harm the Plaintiffs.

43.    The Defendants' campaign included interpretation of these codes, laws and ordinances that were deemed "contrary to reason" and clearly meant to harm the Plaintiffs.

**VIOLATIONS – CONSPIRACY**

**Black Rock - Restaurant**

44.    The Restaurant continually operated until May 17, 2023, when a small "Fire" started inside the Structure.

45.    Up until May 17, 2023, the Defendants were aware that the Restaurant was open and operating as it is located on Centre Street which is a main thoroughfare in the City of Pottsville.

46.    The Fire originated when a fryer malfunctioned inside the kitchen.  The Fire was quickly extinguished.

47.    The Fire occurred in the evening when the Restaurant was closed, and no injuries were suffered.

48.    On May 17, 2023, Defendants, by and through the actions of Trefsger, Condemned the Structure pursuant to the IPMC, Section 108.1.2.

49.    Section 108.1.2 of the IPMC states "Unsafe Equipment. Unsafe equipment includes any boiler, heating equipment, elevator, moving stairway, electrical wiring or device, flammable liquid containers or other equipment on the premises or within the structure

which is in such disrepair or condition that such equipment is a hazard to life, health, property or safety of the public or occupants of the premises or structure."

50.    The Defendants posted the Structure (only) with a sign that stated that "[t]his Structure known as 325 S. Centre Street" is condemned as dangerous and unsafe.

51.    The sign was signed and posted by the Defendant.

52.    No such posting or condemning of the patio and adjacent yard was performed by Defendants.

53.    Defendant, Trefsger stated in the Condemnation Notice that the "equipment" was the fryer.

54.    The Plaintiffs immediately addressed the "equipment" and removed the same from operation in the kitchen.

55.    Two days later, on May 19, 2023, the Defendants conducted an additional inspection and issued a letter with numerous items stating all alleged defects with the Structure and/or Property.

56.    Many of the alleged defects were present at the time that the Defendants conducted the original inspection back in 2021.  Plaintiffs submits that many of the alleged defects were not violations of any code but part of the conspiracy by the Defendants.

57.    Rather than fight the Defendants, the Plaintiff believed that addressing the alleged defects was the best approach to work with the Defendants.

58.    On or about June 6, 2023, the Plaintiff had corrected all items that amounted to "unsafe equipment" under IPMC 108.1.2 and requested of the Defendants that an inspection be performed and the Structure no longer be condemned.

59.    Since June 6, 2023, the Plaintiff has requested numerous times of the Defendants to come
to the Structure and/or Property and conduct an inspection so that the Restaurant could be
reopened for business.

60.    Despite repairing all alleged defects, the Defendants refused to reinspect the Structure
and/or Property.

61.    The IPMC upon which the Defendant condemned the Structure mandated that it reinspect
the Structure and revoke the condemnation.

62.    The Plaintiff was forced to file a Mandamus Action in the Court of Common Pleas,
Schuylkill County seeking the inspection by the Defendant.

63.    The Defendant agreed to settle the Mandamus Action and inspect the Structure/Property.

64.    On or about  August 29, 2024, the Defendant inspected the Structure and found that all
alleged defects were resolved.

65.    The inspection took approximately **30 seconds** for the Defendants to complete and the
next day on August 30, 2024, the Defendants removed the condemnation.  However, the
Plaintiff, Black Rock and Weaver had to wait over **450 days** as the Defendants continued
their conspiracy.

66.    The only item inspected was the removal of the fryer that was the original reason for the
condemnation. None of the alleged defects contained in the May 19, 2023, inspection
report was examined by the Defendants.

67.    During the period of time that the Defendants unlawfully refused to inspect the Structure
the Plaintiff attempted to utilize the courtyard for free events for its loyal supporters and
customers.

68.    The Plaintiff held several events utilizing only the courtyard since the "Structure" remained condemned.

69.    As a result of holding the free events the Defendants criminally cited the Plaintiff, Weaver, alleging that since the Structure was condemned the Plaintiff was not permitted to utilize any of the Property.

70.    The Plaintiff, Weaver, was found not guilty of several of the criminal citations issued by the Defendants.

71.    The citations were issued by Trefsger on his own accord and at the direction of the other Defendants.

72.    Numerous citations issued by Trefsger were dismissed as he had no personal knowledge of any of the alleged actions.  He simply issued citations in an effort to harm the Plaintiffs.

73.    Prior to one of the free events the Defendants sent the fire chief to "speak" to the Plaintiff, Weaver.

74.    The purpose and content of the "conversation" was to inform the Plaintiff, Weaver, that if he simply withdrew his objections to the Defendants actions and demands the entire matter could be resolved, and he could reopen for business.

75.    The Plaintiff, Black Rock, had also submitted building plans ("Plans") after the Fire in an effort to utilize the second floor of the Structure.

76.    The Defendants refused to accept the Plans relying upon an interpretation of the various codes that was a perversion of the true intent of the same.

77. The Plaintiff was forced to appeal the refusal of the Defendants to accept the Plans which ultimately resulted in the Court of Common Pleas finding that the interpretation offered by the Defendants was clearly incorrect.

78. Again, the Defendants had relied upon that interpretation as part of the conspiracy to deprive the Plaintiffs, Black Rock and Weaver, from being able to conduct business in the City of Pottsville.

79. The Defendants interpretation of the various codes and ordinances was contrary to previous interpretations resulting in a violation of their equal protection rights.

80. Additionally, the Defendants have engaged in various other efforts to hinder the Plaintiffs from engaging in business and use of their property.

81. For example, the Plaintiff, Weaver is owner of two (2) additional businesses in the City of Pottsville.

82. The Defendants have targeted these businesses by conducting random inspections, targeting patrons with parking tickets and conducting "surveillance" of the properties.

**ALVERNIA COLLEGE**

83. In 2023 to 2024 Alvernia College announced that it intended to expand its campus, including a student center.

84. Alvernia College approached Plaintiff, Weaver, who operated a coffee shop in the City of Pottsville.

85. Alvernia College wanted to include a coffee shop in the student center and entered into negotiations with Weaver to have him open a second coffee shop.

86. Weaver and Alvernia College came to an agreement that he would open a second coffee shop in the student center.

87.    Alvernia College required certain grants in order to obtain financial support for the construction of the expansion project.

88.    In order to obtain said grants Alvernia College required the City of Pottsville to approve the grant applications.

89.    The Defendants met with the representatives of Alvernia College and informed them that they would not approve any grant applications if Alvernia College utilized Plaintiff, Weaver or any of his businesses for the coffee shop.

90.    The Defendants specifically instructed Alvernia College that if it wanted the City of Pottsville to approve the grant applications it must terminate its agreement with Plaintiff, Weaver.

91.    As a result, Alvernia College was forced to terminate any agreement with Plaintiff, Weaver.

92.    There existed no reason for the Defendants to demand that Alvernia College terminate its agreement with Plaintiff, Weaver, other than to advance their conspiracy to harm the Plaintiffs.

93.    The Defendants knew that by forcing the termination of the agreement with Alvernia College it would cause financial harm to the Plaintiffs.

**FAILURE TO RESPOND**

94.    Since the time that the Plaintiff, Weaver, announced that he intended to run for city council the Defendants have engaged in a campaign of ignoring the repeated requests by Weaver and the other Plaintiffs for inspections, permits, information, approval and various other requests.

95.    For a period starting at the time that Weaver made the announcement to the present time the Defendants have purposely ignored or refused to respond to the Plaintiffs requests.

96.    The Defendants have ignored the Plaintiffs and their professionals who have made significant verbal and written requests.

97.    The Defendants have refused to cooperate with the Plaintiffs, while at the same time the Defendants have cooperated, and continue to cooperate, with all other businesses and individuals who made the same or similar requests as the Plaintiffs.

98.    The Defendants have delayed a significant number of requests for inspections of properties and improvements including failure to respond and a number of times failing to appear at scheduled meetings.

99.    The requests made by the Plaintiffs required a response by the Defendants under the various codes and ordinances.

100.    The Defendants had a duty under the law to respond to the various requests but ignored the same as part of the conspiracy to deprive the Plaintiffs of their constitutional rights.

101.    The Defendants would respond to all other individuals and business entities in a timely manner. However, when dealing with the Plaintiffs the Defendants engaged in a concerted effort to stall and hinder the Plaintiffs business operations and activities.

**ATHLETICS**

102.    The Plaintiff, Weaver and Athletics operated the structure on the property by leasing the same to a religious charter school.

103.    The use of the building was approved prior to 2023 when Weaver announced his candidacy for city council.

104.    The charter school had utilized the building as a gymnasium for its students.

105.    After the announcement of his candidacy the Defendants conducted various inspections of the gymnasium.

106.    The inspections resulted in the finding of alleged violations of the various codes and ordinances.

107.    However, prior to the announcement by Weaver of his candidacy, the gymnasium was found to be in full compliance with all codes and ordinances.

108.    The Defendants "condemned" the gymnasium and precluded the charter school from utilizing the same.

109.    The alleged defects found by the Defendants were again a perversion of the various codes and ordinances employed for the purpose of furthering the conspiracy against the Plaintiffs.

110.    The gymnasium had been utilized by the charter school for years without incident and without any issues being raised by the Defendants.

111.    However, soon after the announcement of Weaver's candidacy the Defendants fabricated alleged violations in an effort to harm the Plaintiffs.

112.    The demands made by the Defendants to correct these fabricated violations was significant and the charter school was not in a financial position to pay for the same.

113.    As a result of the concerted efforts by the Defendants, the charter school terminated its lease with the Plaintiff resulting in the loss of income and a tenant.

114.    Even when the Plaintiff attempted to address the alleged violations the Defendants refused to cooperate with the Plaintiffs.

115.    The Defendants refused to respond to the Plaintiffs repeated requests for information, direction, assistance and inspections.

116.   The Defendants ignored significant verbal and written requests made by Plaintiffs including refusal to inspect the premises.

117.   Several times, the Defendants failed to appear for scheduled meetings, all in an effort to harm the Plaintiffs.

118.   Additionally, the Defendants intentionally overcharged the Plaintiffs for the inspections and plan reviews contrary to law.

**RETALIATION**

119.   **Plaintiff incorporates by reference hereto the allegations set forth in all preceding paragraphs as if the same were more fully set forth here at length.**

120.   **On March 17, 2021, Black Rock had submitted plans to the Defendant to utilize the basement and 1st floor of the Property ("Original Plans").**

121.   **The Original Plans utilized the Work Area Method ("WAM") under the International Existing Building Code ("IEBC").**

122.   **The Original Plans were approved and Black Rock opened for business.**

123.   **After the fire Black  Rock had submitted new building plans ("Plans") on October 5, 2023, for improvements at the Property. Specifically, Black Rock desired to expand the restaurant to include the second (2nd) floor.**

124.   **The Plans utilized the Performance Compliance Method ("PCM") under the IEBC.**

125.   **On November 8, 2023, the Defendants, including Defendant Trefsger, issued a denial letter refusing to review the Original Plan.**

126.   **Defendant refused to inspect the plans stating that under the IEBC Black Rock was not permitted to utilize the PCM under the IEBC opining that once the WAM was used Black Rock could never again utilize any other method.**

127. **Black Rock appealed that determination to the City of Pottsville Board of Appeals.**

128. **The Board found that since there was a pending inspection Black Rock was not entitled to have the plans reviewed.**

129. **However, the Board opinioned that "[i]t is contrary to reason that once a particular building renovation project is initiated, the compliance method must always remain the same, regardless of how much time passes or whether the building is transferred to a different one."**

130. **Black Rock appealed the Board's decision to the Court of Common Pleas who affirmed the Board's decision that pending an inspection new plans were not permitted.**

131. **However, the Court of Common Pleas stated specifically that once an inspection in completed Black Rock was free to utilize the PCM and found that the City's position to be untenable.**

132. **Thereafter, on August 29, 2024, the "inspection" was conducted.**

133. **On September 8, 2025, Plaintiffs filed the within Complaint.**

134. **At the same time on September 8, 2025, Black Rock filed new plans utilizing the PCM ("2025 Plans") to expand the restaurant to use all three (3) floors.**

135. **Pursuant to City of Pottsville Third-Party RFP Policy for Code Inspection (effective January 1, 2025) a "resident or developer will select an inspector from the list based upon the qualifications, cost and experience of the job."**

136. **The Policy further requires the City to " process the building permit and associated paperwork, collect fees, and remit payment for services to the 3rd party**

inspector " while maintaining oversight via post-inspection reports and quarterly meetings (Exhibit A, Overview & Services Requested).

137.     The Policy mandates UCC compliance, with agencies certified by the PA Department of Labor & Industry under 34 Pa. Code § 401.7, and prohibits unilateral changes absent cause (e.g., certification lapse; Exhibit A, Vendor Qualifications).

138.     Consistent with the Policy and UCC (35 P.S. § 7210.501), Plaintiffs selected a certified third-party agency from the City's approved list for the 2025 Plans review.

139.     The Defendant, City of Pottsville and Trefsger initially approved the selection and accepted the 2025 Plans after collecting the appropriate fees.

140.     However, on September 22, 2025, the Defendants, including Trefsger learned of the within lawsuit.

141.     In retaliation for Plaintiff's exercise of its Constitutional rights in filing the within litigation the Defendants, including Trefsger, unilaterally and without cause revoked the selection and bypassing the independent process required under City Code and the UCC.

142.     The Defendants including Trefsger informed the third-party inspectors that "he was taking the plans back" and will reject them without review relying, in part, that the PCM could not be utilized since the WAM had been used in the past.

143.     The actions of the Defendants in violating the Policy, UCC and other laws is clearly in retaliation for Plaintiff's filing of litigation.

144.     Prior to learning of the litigation, the Defendant, including Trefsger, had accepted the selection of a third-party inspector and accepted the fees from Plaintiffs.

145. **Only learning of the litigation did the Defendants, including Trefsger revoked the selection of an independent third-party reviewer and decide to reject the 2025 Plans.**

146. **The retaliation by the Defendants was done with the specific intent to deprive the Plaintiff of its Constitutionally protected rights and civil liberties.**

147. **There exists no legitimate public interest in the retaliation and/or actions of the Defendants.**

148. **The Plaintiff will experience significant hardship and financial duress on account of the retaliation by the Defendants.**

## COUNT I

## PLAINTIFFS VS. DEFENDANTS

## VIOLATION OF 5th and 14th AMENDMENT (SUBSTANTIVE)

149. Plaintiffs incorporate by reference hereto the allegations made in all preceding paragraphs as if the same were more fully set forth here at length.

150. The Defendant, City of Pottsville, is a governmental body that is bound by the United States and the rights of the Plaintiff to Procedural and Substantive Due Process.

151. The Defendants have utilized and/or enforced (or failed) the laws of the Commonwealth of Pennsylvania and **other laws, rules and regulations** against the Plaintiffs in an attempt to deprive them of life, liberty and the pursuit of happiness.

152. Specifically, the Defendants have conspired with the other Defendants to deprive the Plaintiffs' constitutional rights.

153. The Defendants' acts and omission were done in an arbitrary and capricious manner with the direct and indirect intent to harm the Plaintiffs .

154.    Despite the repeated pleas for help the Defendants have refused to enforce the laws they swore to uphold for their own benefit and based upon the conspiracy between themselves and Co-Defendants.

155.    **The Defendants' intentional acts of retaliating against the Plaintiff on account of filing the within litigation is arbitrary, capricious and done with the specific intent to harm the Plaintiff.**

156.    **Said intentional acts were performed with the specific intent to deprive the Plaintiffs of their Constitutionally protected rights and civil liberties.**

157.    As a direct result of the deprivation of their Constitutional Rights the Plaintiffs have suffered the following injuries and damages:

   a.    Past, present and future mental anguish;

   b.    Past, present and future financial harm;

   c.    Loss of enjoyment of life, liberty and pursuit of happiness;

   d.    Loss of the Premises;

   e.    Legal fees, costs and expenses;

   f.    Such other damages as this Honorable Court shall recognize.

158.    The actions of the Defendants were done with a wanton disregard for the wellbeing of the Plaintiffs and with the direct intent to harm them for the Defendants' own benefit.

   WHEREFORE, Plaintiffs demand judgment in their favor in an amount to proven at trial and in excess of $150,000.00, together with pre- and post-judgment interest, punitive damages, attorney's fees, costs and such other relief as this Court may deem just and proper.

## COUNT II

## PLAINTIFFS VS. DEFENDANTS

## VIOLATION OF THE 1st AMENDMENT

159.  Plaintiffs incorporate by reference hereto all allegations made in the preceding
      paragraphs as if more fully set forth here at length.

160.  The Defendant, Township, is a governmental body that is bound by the **Constitution of
      the** United States and the **First Amendment** rights of the Plaintiff.

161.  The Defendants have utilized and/or enforced (or failed) the laws of the Commonwealth
      of Pennsylvania and **other laws, rules and regulations** against the Plaintiffs in an
      attempt to deprive them of their First Amendment Rights under the Constitution.

162.  The Defendants conspired together to harm the Plaintiffs as a result of Plaintiff, Weaver,
      running for office and his public statements concerning the conduct of the Defendants.

163.  The Defendants' acts and omission were done in an arbitrary and capricious manner with
      the direct and indirect intent to harm the Plaintiffs.

164.  Despite the repeated pleas for help the Defendants have refused to enforce the laws they
      swore to uphold for their own benefit and based upon the conspiracy between themselves
      and Co-Defendants.

165.  **The Defendants' intentional acts of retaliating against the Plaintiff on account of
      filing the within litigation is arbitrary, capricious and done with the specific intent
      to harm the Plaintiff.**

166.  **Said intentional acts were performed with the specific intent to deprive the Plaintiffs
      of their Constitutionally protected rights and civil liberties.**

167.    As a direct result of the deprivation of their Constitutional Rights the Plaintiffs have suffered the following injuries and damages:

    a.    Past, present and future mental anguish;

    b.    Past, present and future financial harm;

    c.    Loss of enjoyment of life, liberty and pursuit of happiness;

    d.    Loss of the Premises;

    e.    Legal fees, costs and expenses;

    f.    Such other damages as this Honorable Court shall recognize.

168.    The actions of the Defendants were done with a wanton disregard for the wellbeing of the Plaintiffs and with the direct intent to harm them for the Defendants' own benefit.

WHEREFORE, Plaintiffs demand judgment in their favor in an amount to proven at trial and in excess of $150,000.00, together with pre- and post-judgment interest, punitive damages, attorney's fees, costs and such other relief as this Court may deem just and proper.

## COUNT III

## PLAINTIFFS VS. TREFSGER

## VIOLATION OF THE 1st AMENDMENT

**169.    Plaintiffs incorporate by reference hereto all allegations made in the preceding paragraphs as if more fully set forth here at length.**

**170.    The Defendant, Trefsger, is a duly appointed code enforcement officer and agent for the City of Pottsville and is therefore bound by the Constitution of the United States and the rights of the Plaintiff to First Amendment Protection.**

**171.    The Defendant, Trefsger was acting within his official capacity as code enforcement officer when he retaliated against the Plaintiff for filing of the within litigation.**

172. The Defendant, Trefsger, has utilized and/or enforced (or failed) the laws of the Commonwealth of Pennsylvania and other laws, codes, rules and regulations against the Plaintiffs in an attempt to deprive them of their First Amendment Rights under the Constitution.

173. The Defendant, Trefsger's intentional acts of retaliating against the Plaintiff on account of filing the within litigation is arbitrary, capricious and done with the specific intent to harm the Plaintiff.

174. Said intentional acts were performed with the specific intent to deprive the Plaintiffs of their Constitutionally protected rights and civil liberties.

175. As a direct result of the deprivation of their Constitutional Rights the Plaintiffs have suffered the following injuries and damages:

   a. Past, present and future mental anguish;

   b. Past, present and future financial harm;

   c. Loss of enjoyment of life, liberty and pursuit of happiness;

   d. Loss of the Premises;

   e. Legal fees, costs and expenses;

   f. Such other damages as this Honorable Court shall recognize.

176. The actions of the Defendant, Trefsger were carried out with a wanton disregard for the wellbeing of the Plaintiffs and with the direct intent to harm them for the Defendants' own benefit.

   WHEREFORE, Plaintiffs demand judgment in their favor in an amount to proven at trial and in excess of $150,000.00, together with pre- and post-judgment interest,

**punitive damages, attorney's fees, costs and such other relief as this Court may deem just and proper.**

## COUNT V

## PLAINTIFFS VS. DEFENDANTS

## VIOLATION OF THE 14th AMENDMENT (EQUAL PROTECTION)

177.    Plaintiffs incorporate by reference hereto all allegations made in the preceding paragraphs as if more fully set forth here at length.

178.    The Defendant, Township, is a governmental body that is bound by the **Constitution of the** United States and the rights **under the 14th Amendment.**

179.    The Defendants have utilized and/or enforced (or failed) the laws of the Commonwealth of Pennsylvania and **state and local laws, rules and regulations** against the Plaintiffs in an attempt to deprive them of their 14th  Amendment Rights under the Constitution.

180.    The Defendants enforced, applied and interpreted the various codes, ordinances and laws differently as against the Plaintiffs when compared to other individuals and businesses.

181.    The Defendants intentionally ignored and failed to cooperate with the Plaintiffs contrary to the law and their obligations while at the same time complying with the law and cooperating with other individuals and businesses.

182.    The Defendants conspired together to harm the Plaintiffs as a result of Plaintiff, Weaver, running for office and his public statements concerning the conduct of the Defendants.

183.    The Defendants' acts and omission were done in an arbitrary and capricious manner with the direct and indirect intent to harm the Plaintiffs.

184.    Despite the repeated pleas for help the Defendants have refused to enforce the laws they swore to uphold for their own benefit and based upon the conspiracy between themselves and Co-Defendants.

185.    **The Defendants' intentional acts of retaliating against the Plaintiff on account of filing the within litigation is arbitrary, capricious and done with the specific intent to harm the Plaintiff.**

186.    **Said intentional acts were performed with the specific intent to deprive the Plaintiffs of their Constitutionally protected rights and civil liberties.**

187.    As a direct result of the deprivation of their Constitutional Rights the Plaintiffs have suffered the following injuries and damages:

    a.      Past, present and future mental anguish;

    b.      Past, present and future financial harm;

    c.      Loss of enjoyment of life, liberty and pursuit of happiness;

    d.      Loss of the Premises;

    e.      Legal fees, costs and expenses;

    f.      Such other damages as this Honorable Court shall recognize.

188.    The actions of the Defendants were done with a wanton disregard for the wellbeing of the Plaintiffs and with the direct intent to harm them for the Defendants' own benefit.

        WHEREFORE, Plaintiffs demand judgment in their favor in an amount to proven at trial and in excess of $150,000.00, together with pre- and post-judgment interest, punitive damages, attorney's fees, costs and such other relief as this Court may deem just and proper.

Law Office of Stephen T. Carpenito

***Stephen T. Carpenito, Esquire***

By: _____

Stephen T. Carpenito, Esquire
Attorney for Plaintiff

Date:  October 7, 2025